**MAHOWALD et al. v. UNITED STATES.**
**FAIRBANKS et al. v. UNITED STATES.**

Nos. 13891, 13892.

United States Court of Appeals,
Eighth Circuit.

July 22, 1949.

Halvor L. Halvorson, Minot, N. D. (Halvor L. Halvorson, Jr., Minot, N. D., on the brief), for appellants.

Harry Lashkowitz, Assistant United States Attorney, Fargo, N. D. (P. W. Lanier, United States Attorney, Fargo, N. D., on the brief), for appellee.

Before GARDNER, Chief Judge. and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

In these cases the United States made separate contracts with appellants to buy certain lands from them to be used by the Government in the construction of the Garrison Dam and Reservoir in North Dakota. Each contract provided for payment of the stipulated purchase price on acceptance by the United States within three months of the date of the execution of the contract by the vendor, plus a reasonable time for examination and approval of the vendor's title by the United States.

The contracts also provided that the United States might at its election acquire title to the lands by condemnation proceedings, in which event the landowners agreed to cooperate in the prosecution of the actions, and that the consideration stipulated in the contract should be "the full amount of the award of just compensation inclusive of interest for the taking" of the lands. The United States was granted the right to immediate occupancy and use of the lands from the date of its acceptance of the contracts until conveyance by the vendors.

Prior to the execution of the contracts, the lands had been viewed and appraised by representatives of the Government employed for that purpose, and the purchase price stipulated in each of the contracts was the value of the lands purchased as determined by these appraisers.

After the execution of the contracts by the appellants and their acceptance by the United States, each appellant attempted to rescind the contract and, to that end, served upon the purchasing officer in charge of the project notice of rescission, on the ground that the contracts had in each instance been obtained by fraud and false representations made to the landowner by the Government agent negotiating the purchase. In the condemnation proceedings which followed each landowner alleged that his contract had been obtained by the fraudulent representations of the agent of the Government negotiating the purchase of the lands, and asked an award greater than the agreed purchase price.

By agreement between the parties the cases were submitted to the district judge

without a jury, the sole issue being the validity of the contracts for the purchase of the lands. Two of the cases were consolidated for trial, and all have been consolidated for this appeal.

In each case the appellant landowner testified that the agent of the Government who negotiated the contracts for the purchase of the lands represented that the price stipulated in the contract was all that the Government could or would pay for the land; that the Government preferred to acquire the property by purchase direct from the landowner, but that if the landowner refused to sell the Government would acquire the land by condemnation, in which event the landowner could not recover more than the price offered, and might receive less. Each landowner testified that the Government agent said that, if the Government was forced to resort to condemnation proceedings, possession of the land would be acquired by the United States within 30 to 60 days from the institution of the proceedings, and the landowner would be immediately ejected; but that, if the landowner accepted the Government's offer to purchase, he would be permitted to remain on the land indefinitely. Each landowner testified that the lands were reasonably worth approximately three times the stipulated purchase price. This evidence as to the value of the lands was received for consideration by the court only upon the question of the validity of the contracts. In neither of the cases was any other witness called by the appellants.

In the Fairbanks and Fix case the appellants testified that they were not told by the agent representing the Government and that they did not know that in condemnation proceedings they would have the value of their land determined at a trial and their compensation fixed by a jury on the evidence received at the trial. But they admitted that the proposed construction of the dam and reservoir was generally known in the neighborhood, that they had discussed it with their neighbors, and that they understood that their land would possibly be needed in the construction work. In the Mahowald case Lawrence Mahowald admitted that he knew that in the event of

condemnation proceedings he would be entitled to a hearing in court upon the question of just compensation. Appellant Fairbanks refused to sign the contract for the sale of his land until he had consulted his banker. The Government agent took Fairbanks to the bank in his car, where the banker saw the contract and where presumably he advised Fairbanks to sign it. The contract was signed at the bank. The banker was not called as a witness.

For the United States the agent negotiating the contracts of purchase denied the making of any of the false representations testified to by the appellants. He admitted that he did advise the appellants that it was the policy of the United States to permit the landowners to remain on the land purchased by the Government until such time as it was required in the construction of the contemplated project; that in such cases the landowner and the Government agreed upon a fair rent. There was also evidence upon the part of the Government that such was the policy of the Government, and that it had been given publicity in the local newspapers. The construction of the proposed dam and reservoir required the acquisition by the United States of approximately 450,000 acres of land, and the project had received wide publicity in the press of North Dakota.

In each of the cases the district judge resolved the issue submitted to him in favor of the United States. In each case he made findings that the execution of the contract was not obtained by false representations or fraud on the part of the agent of the Government negotiating it, and that the stipulated consideration for the purchase of the land in each case represented the fair value of the land and constituted just compensation for its taking; and concluded as a matter of law that the contracts were valid and binding upon the appellants. Judgment was entered vesting title to the lands in the United States, the Government having filed in the condemnation proceedings a declaration of taking, and having paid into court the stipulated purchase price in each case.

On these appeals the sole contention of appellants in each case is that the findings

of fact of the trial judge are not supported by substantial evidence, and that the contracts are void and not binding upon appellants because induced by fraud perpetrated upon them by the agent of the Government negotiating the purchase of the lands. We are unable to agree.

Certainly we cannot say that the findings of the trial judge who saw and heard the witnesses are clearly erroneous. That the United States and landowners may enter into valid contracts of the character involved in these appeals, and that in the event of the acquisition of the lands by the Government by condemnation proceedings, as the contracts permitted, the landowner is bound by the price stipulated in the contract, are no longer open to question. Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, 611; Oliver v. United States, 8 Cir., 155 F.2d 73, 75; Danforth v. United States, 308 U.S. 271, 282-283, 60 S.Ct. 231, 84 L.Ed. 240; Albrecht v. United States, 329 U.S. 599, 601, 67 S.Ct. 606, 91 L.Ed. 532.

We find nothing in the record to justify this court in substituting its judgment for that of the district court on the questions of fact involved in these cases.

Judgments affirmed.