Mr. Justice SWAYNE
 

 delivered the opinion of the court.
 

 This is a writ of error to the Supreme Court of the State of Louisiana. The record discloses the following case: On the 16th of April, 1866, the plaintiffs in error, citizens aud residents of the State of New York, brought suit against the defendants in error in the fourth District Court of New Orleans, upon a promissory note made at New York on the 10th day of August, 1860, by the defendants, under their firm name of Bloom, Kahn & Co., to ithe plaintiffs, by their firm name of A. T. Stewart & Co., for the sum of $3226.24, payable at the office of A. Levy & Co., in the city of New Orleans, with the current rate of exchange on New York,
 
 *501
 
 seven months from date;- The plaintiffs, by their petition, claimed also to recover a few dollars for the balance of an account. The note was duly protested at maturity for nonpayment. On the 28th of the same month of April the defendant, Levy, filed his answer, wherein he alleged that he knew nothing of the correctness of the note, or account, and demanded full proof. He also pleaded the statutory prescription of that State of five years- as a bar to the action. The other defendants, Bloom, Kahn & Adler, answered subsequently. They denied all the allegations of the petition, and also set up the defence of prescription.
 

 A statute of the State provides, that when “new facts” are alleged in the answer, “ neither replication nor rejoinder shall be admitted.” The facts are “ considered as denied by the plaintiff.”
 
 *
 

 Kahn was examined upon interrogatories, and answered that the defendants’ firm was constituted as alleged in the plaintiffs’'petition, and that their place of business at the date of th^ note was Clinton, Louisiana. Another witness testified that he had known the defendant, Levy, since the year 1854 or 1855; that Levy had resided in New Orleans since that time, and was there during the period of the rebellion. At the trial the plaintiffs submitted this testimony, and the note and protest, to the court. It does not appear that any evidence was offered touching the account. The court gave judgment for the defendants. Upon what ground it was given is not disclosed in the record.
 

 The plaintiffs appealed to the Supreme Court of the State. In that court they insisted that the act of Congress of June 11, 1864, entitled “ An act in relation to the limitation of actions in certain eases,” interrupted the running of the prescription, and entitled them to recover. The Supreme Court affirmed the judgment of the District Court. The record shows they held that “ more than five years having elapsed after the maturity of the note before the citations were served
 
 *502
 
 on the defendants, the plea of prescription must be sustained.” It is clear that the judgment was given solely upon this ground. The case would have been more satisfactorily presented if a bill of exceptions had been taken at the proper time, and the material facts in that way placed upon the record. But enough is shown to develop clearly the action of the Supreme Court of the State, and the point we are called upon to review. There is no controversy as to the facts. Under the circumstances, a refusal on our part to exercise the jurisdiction invoked would involve a sacrifice of substance to form and unwarrantably defeat the ends of justice.
 

 Our attention has been called to the second section of the act of Congress of February 5,1867, amending the Judiciary Act of 1789.
 
 *
 
 That section is to a great extent a transcript of the 25th section of the prior act. There are several alterations of phraseology which are not material. A change of language in a revised statute will not change the law from what it was before, unless it be apparent that such was the intention of the legislature.
 
 †
 
 But at the close o£the second section there is a substantial addition and omission. The addition in no wise concerns this case, and need not be remarked upon. The omission is of these words in the 25th section of the original act: “ But no other error shall be regarded as a ground of reversal in any such case, as aforesaid, than such as appears on the face of the record, and immediately respects the before-mentioned questions of validity or construction of the said Constitution, treaties, statutes, commissions, or authorities in dispute.”
 
 ‡
 

 It is a rule of law that where a revising statute, or one enacted for another, omits provisions contained in the original act, the parts omitted cannot be kept in force by construction, but are annulled.
 
 §
 

 
 *503
 
 Whether the 25th section of the original act is superseded by the second section of the amendatory act is a point not necessary in this case to be determined; for, conceding the negative, the question before us is within the omitted category, is presented by the record, and is the only one we are called upon to consider. It is alike within the section in question of the original and of the amendatory act. In ■either view there is uo jurisdictional difficulty.
 

 In
 
 Hanger
 
 v.
 
 Abbott
 

 *
 

 this court held that the time during which the courts in the States lately in rebellion were closed to the citizens of the loyal States is, in suits since brought, to be deducted from the time prescribed by the statutes of limitations of those States respectively, although the statutes themselves contain no such exception, and this independently of the act .of Congress of 1864. In the case of
 
 The
 
 Protector,
 
 †
 
 the same rule was applied to the acts of Congress of 1798 and 1803, fixing the time within which appeals shall be taken from the inferior Federal tribunals to this court. The ease before us was decided prior to the decision of this court in
 
 Hanger
 
 v.
 
 Abbott,
 
 with which it is in direct conflict. But- apart from the act of 1864, it would present uo ground of Federal jurisdiction.
 
 Hanger
 
 v.
 
 Abbott
 
 came into this court under, the 22d section of the Judiciary Act of 1789, or if that section is superseded, under the second section of the amendatory act of 1867. Its determination, therefore, depends necessarily upon the construction and effect to be given to the act of 1864.
 

 The note upon which the suit is founded matured upon the 13th of March, 1861. The prescription of five years expired on the 13th of March, 1866. This action was commenced on the 16th of April, 1866, one mouth and three days after the period of limitation had elapsed.
 

 The act of 1864 consists of a single section containing two distinct clauses. The first relates to cases where the cause of action accrued subsequent to the passage of the act. The second to cases where the cause of action accrued before its
 
 *504
 
 passage. The case before us belongs to the latter class. The first clause of the statute may, therefore, be laid out of view. The second enacts that “ whenever, after such action —civil or criminal — such have accrued, and such person cannot, by reason of such resistance of the laws, or such interruption of judicial pi’oceédings, be arrested or served with process for the commencement of the action, the time during' which such person shall be beyond the .reach of legal process shall not be deemed or taken as any part of the time limited by law for the commencement of such action.”
 

 A severe and literal construction of the language employed might conduct us to the conclusion, as has been insisted in another case before us,
 
 *
 
 that this clause was intended to be made wholly prospective as to the period to be deducted, and that it has no application where the action was barred at the time of its passage. Such, we are satisfied, was not the intention of Congress; A case may be within the meaning of a statute and not within its-letter, and within its letter and not within its meaning. The intention of the law-maker constitutes the law.
 
 †
 
 The statute is a remedial one and should be construed liberally to carry out the wise and salutary purposes of its enactment. The construction contended for would deny all relief to the inhabitants of the loyal States having causes of action against parties in the rebel States if the prescription had matured when the statute took effect, although the occlusion of the courts there to such parties might have been complete from the beginning of the war down to that time. The same remarks w’ould apply to crimes of every grade if the offenders were called to account under like circumstances. It is not to be supposed that Congress intended such results. There is no prohibition in the Constitution against retrospective legislation of this character. We are of the opinion that the meaning of the statute is, that the time which elapsed while the
 
 *505
 
 plaintiff could not prosecute his suit, by reason of the rebellion, whether before or 'after the passage of the act, is to be deducted. Considering the evils which existed, the remedy prescribed, the object to be accomplished, and the considerations by which the law-makers were governed — lights ■which every court must hold up for its guidance when seeking the meaning of a statute which requires construction— we cannot doubt the soundness of the conclusion at which we have arrived.
 

 On the 15th of April, 1861, President Lincoln issued his proclamation announcing the existence of the rebellion, and calling for volunteers to the number of 75,000 to suppress it. On the 19th of the same month he issued a further proclamation, announcing the blockade of Louisiana and other States in rebellion. By a proclamation of the 16th of August, 1861, he declared that the States named in it, Louisiana being one of them, were in a state of insurrection against the United States, and forbade all commercial intercourse between them and the other States of the Union. This proclamation was authorized by the 5th section of the act of July 13, 1861. The authority of the United States was excluded from the entire State of Louisiana from the date of the first proclamation down to the month of May, 1862, when the city of New Orleans and a small strip of adjacent territory lying along the Mississippi River below that city was reclaimed from the dominion of the rebels by the military forces of the United States. Even then no court there, State or Federal, was open to the plaintiffs. Levy was there, but the other defendants were elsewhere in the State whither the arms of the United States had not penetrated. But, without pursuing the subject further, here was a period of more than a year to be deducted, according to the act of Congress, from the time necessary, under the State law, to create a bar, and this defeated the prescription relied upon by the defendants.
 

 But it has been insisted that the act of 1864 was intended to be administered only in the Federal courts, and that it
 
 *506
 
 has no application to cases pending in the courts of the States.
 

 The language is general. There is nothing in it which requires or will warrant so narrow a construction. It lays down a rule as to the subject,'and has no reference to the tribunals by which it is to be applied. A different interpretation would defeat, to a large extent, the object of its enactment. All those who could not sue in the courts of the United States, including the loyal men who were driven out by the insurrection and returned after it ceased, and those of the same class who remained at home during the war, would be deprived of its benefits.- The judicial anomaly would be presented of one rule of property in the Federal courts, and another and a different one in the courts of the State, and debts could be recovered in the former which would be barred in the latter. This would be contrary to the uniform spirit of the National jurisprudence from the adoption of the Judiciary Act of 1789 down to the present time.
 

 The act thus construed, it is argued, is unwarranted by the Constitution of the United States, and therefore void.
 

 The Constitution gives to Congress the power to declare war, to grant letters of marque and reprisal, and to make rules concerning captures on land and water; to raise and support armies, to provide and maintain a navy, and to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions.
 

 The President is the commander-in-chief of the army and navy, and of the militia of the several States, when called into the service of the United Státes, and it is made his duty to take care that the laws are faithfully executed. Congress is authorized to make all laws necessary and proper to carry into effect the granted powers. The measures to be taken in carrying on war and to suppress insurrection are not defined. The decision of all such questions rests wholly in the discretion of those to whom the substantial powers involved are confided by the Constitution.
 

 
 *507
 
 In the latter case the power is not limited to victories in the field and tbe dispersion of the insurgent forces. It carries with it inherently the power to guard against the immediate renewal of the conflict, and to remedy the evils •which have arisen from its rise and progress. This act falls within the latter category. The power to pass it is necessarily implied from the powers to make war and suppress insurrections. It is a beneficent exercise of this authority. It only applies coercively the principle of law of nations, which ought to work the same results in the courts of all the rebellious States without the intervention of this enactment.
 
 *
 
 It promotes justice and honesty, and has nothing penal or in the nature of confiscation in its character. It would he a strange result if those in rebellion, by protracting the conflict, could thufe rid themselves of their debts, and Congress, which had the power to wage war and suppress the insurrection, had no power to remedy such an evil, which is one of its consequences. What is clearly implied in a written instrument, is as effectual as what is expressed.
 
 †
 
 The war power and the treaty-making power, each carries with it authority to acquire territory.
 
 ‡
 
 Louisiana, Florida, and Alaska were acquired under the latter, and California under both. The act is within tbe canons of construction laid down by Chief Justice Marshall.
 
 §
 

 This objection to the statute is untenable.
 

 The judgment of the Supreme Court of the State is reversed. The cause will be remanded to that court, with directions to overrule the plea of prescription, and to proceed in the case
 

 In conformity to law.
 

 *
 

 Code, Art. 329.
 

 *
 

 14 Stat. at Large, 385.
 

 †
 

 Theriat
 
 v.
 
 Hart, 2 Hill, 381, note; Douglass
 
 v.
 
 Howland, 24 Wendell, 47.
 

 ‡
 

 1 Stat. at Large, 85.
 

 §
 

 Ellis
 
 v.
 
 Paige et al., 1 Pickering, 43; Nickols v. Squire, 5 Id. 168; Bartlet
 
 v.
 
 King’s Executors, 12 Massachusetts, 537.
 

 *
 

 6 Wallace, 632.
 

 †
 

 Id. 687.
 

 *
 

 See
 
 infra,
 
 511, United States
 
 v.
 
 Wiley, the case immediately succeeding. — Rep.
 

 †
 

 United States
 
 v.
 
 Freeman, 3 Howard, 565; Same
 
 v.
 
 Babbit, 1 Black, 61; Slater
 
 v.
 
 Cave, 3 Ohio State, 80.
 

 *
 

 Hanger
 
 v.
 
 Abbott, 6 Wallace, 532.
 

 †
 

 United States
 
 v.
 
 Babbit, 1 Black, 61.
 

 ‡
 

 American Insurance Company
 
 v.
 
 Canter, 1 Peters, 511.
 

 §
 

 McCulloch
 
 v.
 
 Maryland,
 
 4
 
 Wheaton, 316.