**UNITED STATES v. CERTAIN PARCELS OF LAND IN POTTER TP., BEAVER COUNTY, PA., et al.**

Civ. A. Nos. 2515, 2628.

United States District Court
W. D. Pennsylvania.

Jan. 31, 1952.

692

Thomas E. Shannon, Sp. Asst. to U. S. Atty., Pittsburgh, Pa., for plaintiff.

McCrady & Nicklas, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This matter comes before the Court on a Rule to Show Cause why the McCrady-Rodgers Company should not be permitted to become a party defendant and secure certain relief in the way of additional compensation and damages as a subsequent title holder to property condemned by the United States.

Pursuant to the request of the Commissioner of the Federal Public Housing Authority, based on findings of the President of the United States that an acute shortage of housing existed in the area or locality in and about the Township of Potter, County of Beaver, Commonwealth of Pennsylvania, proceedings were instituted on March 25, 1943, to acquire an interest in the subject lands.

The proceedings were commenced under the authority of the Act of August 1, 1888, 25 Stat. 357, U.S.C.A., tit. 40, § 257; the Act of February 26, 1931, 46 Stat. 1421, U.S.C.A., tit. 40, §§ 258a to 258e; the Act of October 14, 1940, Public No. 849, 76th Congress, as amended, 42 U.S.C.A. § 1521 et seq.; and Executive Order No. 9070, dated February 24, 1942, 50 U.S.C.A. Appendix, § 601 note; the Second War Powers Act, Public No. 507, 77th Congress, 50 U.S.C.A.Appendix, § 633 et seq.; Executive Order No. 9150, dated April 28, 1942, funds appropriated by the Act of October 14, 1940, Public Resolution 106, 76th Congress, and Acts supplementary thereto and amendatory thereof.

By declaration of taking filed May 3, 1943, the estate acquired for public use was the exclusive use of the lands for a period of one year, with the right to renew from year to year for the duration of the existing national emergency as determined by the President, and three years thereafter, upon the same terms and conditions.

On or about June 15, 1949, the McCrady-Rodgers Company purchased the involved property from the John Boles Estate. On December 8, 1949, the Government and the Boles Estate stipulated for judgment of just compensation. The McCrady-Rodgers Company consented to the compensation as set forth in the stipulation as binding upon them only to and including July 24, 1950.

On December 9, 1949, the Government filed an amendment to the declaration of taking. The estate taken was amended to read as follows, the words added being set out in brackets: " * * * for the duration of the existing national emergency, as determined by the President, and three years thereafter, [or for so long as determined necessary by the Administrator pur-

suant to the provisions of Section 313 of Public Law 849, 76th Congress (54 Stat. 1125), as amended, whichever period is greater,] * * *."

It is not in dispute that the petitioner, McCrady-Rodgers, acquired fee simple title to the real estate involved in the original taking prior to the Government's amendment to the declaration of taking. It was furthermore provided in the amendment to the declaration of taking that a copy of said proceeding be served upon the parties in interest, which necessarily included the petitioner as the actual title holder to the real estate.

There is authority to the effect that where a person seeking to intervene in a condemnation proceeding could not properly have been made a defendant, intervention as a matter of right did not exist but, at best, was permissive and within sound discretion of the court. United States v. 1,830.62 Acres of Land in Botetourt County et al., D.C., 51 F.Supp. 158.

As I read this opinion, the conclusion reached is based on the general sound discretion of the Court rather than the Federal Rules of Civil Procedure.

■ However, the Rules of Civil Procedure are not applicable to proceedings in condemnation except on appeal. United States v. 1,830.62 Acres of Land in Botetourt County et al., supra; United States v. Certain Land in City of Poughkeepsie, Dutchess County, New York, D.C., 71 F.Supp. 363; Rules 24(a) and 81(a) (7), Federal Rules of Civil Procedure, 28 U.S.C.A.

Were the Rules of Civil Procedure binding to this proceeding, I would conclude that such intervention should be granted both in conformity with Rule 24(a) authorizing intervention as a matter of right, and Rule 24(b) providing for permissive intervention. Since, however, Rule 81(a) (7) precludes this Court from giving affect to said rules in condemnation proceedings, the authority of this Court to grant intervention is premised upon its sound discretion.

■ As a matter of justice and thorough administration of the law, where all the persons interested have not been made parties to the proceeding, the court may allow them to intervene or be made parties. United States ex rel. and for Use of Tennessee Valley Authority v. Powelson et al., 4 Cir., 118 F.2d 79; 29 C.J.S., Eminent Domain, § 237.

■ The declaration of taking, the deposit of the estimated just compensation in the registry of the Court, the fixing of title, the determination of just compensation in accordance with state procedure as directed by Federal law, and the ultimate distribution of the just compensation to those determined to be legally entitled thereto is one continuous integrated process of litigation. United States v. Catlin, 7 Cir., 142 F.2d 781; United States v. 17,-280 Acres of Land, etc., D.C., 47 F.Supp. 267.

The allowance of intervention by one who claims an interest in the condemnation fund or who will be adversely affected by its distribution is only one of the steps in the attainment of the ultimate objective of the litigation.

■ The petition for intervention claims additional compensation and damages, and consequently an interest in the condemnation fund in the registry of the court. It follows that the court has jurisdiction of the subject matter and of the parties even though the Rules of Federal Procedure do not apply. Hopkins v. McClure, 10 Cir., 148 F.2d 67; Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 665, 61 S.Ct. 666, 85 L.Ed. 975.

McCrady-Rodgers acquired title to the property prior to the Government's amendment to the declaration of taking, and since the order issued, pursuant to said amendment, specifically provided that a copy of the amendment to petition in condemnation, together with a copy of the order, be served upon the parties in interest, necessarily including McCrady-Rodgers as the actual title holder to the estate, it would appear that McCrady-Rodgers must be deemed a party in interest and consequently a party to this proceeding.

■ In the exercise of my discretion and to make possible full and complete justice

to all interested and necessary parties to litigation, the leave to intervene should be allowed.

The second question for determination relates to the right of McCrady-Rodgers Company to the additional relief by way of compensation and damages as a subsequent title holder to property condemned prior to the time that the interest in said real estate was conveyed by the former owner to the petitioner.

The present owner of the involved premises, McCrady-Rodgers Company, in its answer to the petition of the United States of America for rule to show cause why judgment of just compensation should not be entered, contends in substance that the amendment filed by the Government was improper and without authority, and was, in fact, a new proceeding under which compensation should be redetermined.

The defendants' position is based on the assumption that the national emergency, as applicable to this taking, has been terminated by the Joint Resolution of Congress of July 25, 1947, c. 327, sec. 3, 61 Stat. 451.

It is the position of the United States that the Joint Resolution of July 25, 1947, c. 327, sec. 3, 61 Stat. 451, never affected the termination of its right to use and to hold possession of the premises involved. The United States asserts that rather than having been terminated, its right to use and possession of the land in question has been continued by appropriate Acts of Congress.

As stated, the authority for this proceeding is the Act of October 14, 1940, as amended, commonly known as the Lanham Act. The authority granted by that Act which is codified at 42 U.S.C.A. § 1521 et seq., is a specific grant to acquire real estate by purchase or lease, including condemnation under the Act of August 1, 1888, 40 U.S.C.A. § 257.

As of the institution of this proceeding on March 25, 1943, the only limitation on this authority was section 4, renumbered § 301, of the Act of October 14, 1940, 54 Stat. 1127, codified with amendments to the date of taking, 42 U.S.C.A. § 1541,

which provided: "When the President shall have declared that the emergency declared by him on September 8, 1939, has ceased to exist (a) the authority contained in sections 1521, 1532, 1561, and 1562 of this title shall terminate except with respect to contracts on projects previously entered into or undertaken and court proceedings then pending, and (b) property acquired or constructed under subchapters II–IV (including schools and hospitals) shall be disposed of as promptly as may be advantageous under the circumstances and in the public interest. * * *"

It should be noted that the above termination provision was not applicable to contracts on projects previously entered into or undertaken nor on pending court proceedings.

The chronological statement of the amendments to the so-called limitation provision is sufficient to show the continual effectiveness, even after December 9, 1949, which is the date defendant claims the Government is without authority to acquire and to hold the subject property.

July 7, 1943, Public No. 119, 78th Cong., 1st Sess., 57 Stat. 387, 388: "Sec. 313. The Administrator shall, as promptly as may be practicable and in the public interest, remove all housing under his jurisdiction which is of a temporary character, * * *. Such removal shall, in any event, be accomplished not later than two years after the President declares that the emergency declared by him on September 8, 1939, has ceased to exist, with the exception only of such housing as the Administrator, after consultation with local communities finds is still needed in the interest of the orderly demobilization of the war effort: * * *."

July 25, 1947, Joint Resolution, 80th Cong., 1st Sess., 61 Stat. 449, 451, 453: "Sec. 3. In the interpretation of the following statutory provisions, the date when this joint resolution becomes effective shall be deemed to be the date of the termination of any state of war heretofore declared by the Congress and of the national emergencies proclaimed by the President on September 8, 1939, and on May 27, 1941;"

Section 4 of the Act of July 7, 1943, 57 Stat. 388; June 28, 1948, Public No. 796, 80th Cong., 2d Sess., 62 Stat 1062, 1064: "Sec. 4. Section 313 of the Act \* \* \* approved October 14, 1940, as amended, is hereby amended by striking out the following words in the second sentence: 'two years after the President declares that the emergency declared by him on September 8, 1939, has ceased to exist' and inserting in lieu thereof 'January 1, 1950' ".

October 25, 1949, Public No. 387, 81st Cong., 1st Sess., 63 Stat. 905, 906: "Sec. 5. Section 313 of the Act \* \* \* approved October 14, 1940, as amended, is hereby amended by striking out 'January 1, 1950' and inserting in lieu thereof 'January 1, 1951' ".

April 20, 1950, 64 Stat. 72, U.S.Cong. Serv., 1950, 81st Cong., 2nd Sess., p. 73: "Sec. 313. Except as otherwise provided in this Act, the Administrator shall, as promptly as may be practicable and in the public interest, remove (by demolition or otherwise) all housing under his jurisdiction which is of a temporary character, as determined by him, \* \* \*. Such removal shall, in any event, be accomplished not later than December 31, 1952 or by such later date as may be required because of extensions of time in accordance with section 604 hereof, with the exception only of such housing as the Administrator, after consultation with local communities, finds is still urgently needed because of a particularly acute housing shortage in the area: \* \* \*."

It is clear under these Acts that Congress has expressly authorized the use of the property until December 31, 1952, or to such later date as may be required in the discretion of the Administrator under Section 604 of the Act, 64 Stat. 64.

In analyzing the present problem, the paramount question appears to be what were the rights of the Federal Government which the McCrady-Rodgers Company was subject to when purchasing the property in question. The record shows that the property was acquired for a housing project due to an acute shortage of housing in the particular area; that the land would be used during the period of emergency declared by the President of the United States and three years thereafter. It is to be noted at this point that the emergency declared by the President has not been generally terminated. While the President, by Presidential Proclamation No. 2714, December 31, 1946, 50 U.S.C.A.Appendix, § 601, proclaimed a cessation of hostilities, effective December 31, 1946, this had no effect upon the pending emergency. Werner v. United States, 9 Cir., 188 F.2d 266; Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421; New York Life Ins. Co. v. Durham, 10 Cir., 166 F.2d 874; Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 881; Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469; United States ex rel. Bejeuhr v. Shaughnessy, 2 Cir., 177 F.2d 436, certiorari denied 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 585; Waller v. United States, 78 F.Supp. 816, 114 Ct.Cl. 640.

True, Congress, by Joint Resolution dated July 25, 1947, Public No. 239, 61 Stat. 449, did terminate certain emergency and war powers which included section 4 of the Act of July 7, 1943, 57 Stat. 388. However, these Acts of 1943, 1947, 1948, 1949 and 1950 do not purport to limit the period for which temporary takings may be extended. This section 313, and its various amendments, constitute directions by Congress to housing officials concerning the administration of temporary housing projects. The legislation relates to removal of temporary structures without regard to the nature of the title under which land is occupied.

There has been no statute terminating the emergency for purposes of renewals. That Congress was not terminating the national emergency as defined in leases or condemnation petitions by which the land on which the projects were located were acquired, is demonstrable in another way. The requirements for removal of temporary structures have never been absolute. Provision has always been made for exceptions from the time limitation depending upon administrative determinations.

Obviously, Congress assumed that for such situations the term of the temporary taking would continue. The subsequent amendments to section 313 negative any

notion that Congress intended that, as a collateral result of the Joint Resolution of 1947, the permissible period for extension of temporary takings had been delimited.

Still further, defendant is apparently under the impression that the temporary housing project located on his land is in existence because the Administrator has exercised his authority and declared it within the exception provision of section 313. However, such is not the case in this proceeding. The Government's taking is identified with the emergency which has not been terminated. As noted, the removal date is now December 31, 1952, unless an exception is determined by the Administrator, or unless Congress extends the December 31, 1952 period. In any event, the Administrator has not deemed the housing project located on defendant's land as within the exception provision of section 313. Until such time as the Administrator so acts, the question of whether or not there has been a new taking is not in issue.

Still further regarding the purpose for which the estate was acquired, the pleadings note a housing project due to an acute housing shortage.

As early as Stewart v. Kahn, 1870, 11 Wall. 493, 507, 20 L.Ed. 176 and Hamilton v. Kentucky Distilleries & Warehouse Co., 1919, 251 U.S. 146, 161, 40 S.Ct. 106, 110, 64 L.Ed. 194, it was held that: "* * * 'The power (referring to the war power) is not limited to victories in the field and the dispersion of the insurgent forces. It carries with it inherently the power to guard against the immediate renewal of the conflict, and to remedy the evils which have arisen from its rise and progress.' * * *"

It is important to remember that it is the function of the Legislature to determine in the first instance what uses are public, and when Congress has spoken its decision is entitled to deference until it is shown to involve an impossibility. Old Dominion Land Co. v. United States, 1925, 269 U.S. 55, 66, 46 S.Ct. 39, 70 L.Ed. 162; United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 680, 16 S.Ct. 427, 40 L.Ed. 576; United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 551, 66 S.Ct. 715, 90 L.Ed. 843. By express declaration of authority set out in the Lanham Act, Congress decreed that housing for persons engaged in national defense activities was essential to the national defense, 42 U.S. C.A. § 1521. "Such legislation is clearly within the war powers granted to Congress by the Constitution", United States v. City of Chester, 3 Cir., 144 F.2d 415, 418; United States v. Certain Parcels of Land, Etc., D.C., 54 F.Supp. 943, although the authority to acquire land for a defense housing project exists by legislation independent of the war powers, United States v. Certain Land in Juneau, D.C., 70 F.Supp. 609. As the Supreme Court said in Highland v. Russell Car Co., 279 U.S. 253, 261, 49 S.Ct. 314, 316, 73 L.Ed. 688: "Under the Constitution and subject to the safeguards there set for the protection of life, liberty, and property * * * the Congress and the President exert the war power of the nation, and they have wide discretion as to the means to be employed successfully to carry on * * *. The measures here challenged are supported by a strong presumption of validity, and they may not be set aside unless clearly shown to be arbitrary and repugnant to the Constitution. * * *"

Where the Federal Government under the Constitution has power to undertake the purpose for which land is sought to be condemned, then the use is a public one. City of Oakland v. United States, 9 Cir., 124 F.2d 959, 964, certiorari denied, 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753.

It is immaterial whether such defense housing projects constructed under the provisions of the Lanham Act are put to other uses and are not occupied by persons engaged in national defense activities. United States v. City of Philadelphia, D.C., 56 F.Supp. 862, affirmed per curiam, 3 Cir., 147 F.2d 291, certiorari denied, 325 U.S. 870, 65 S.Ct. 1410, 89 L.Ed. 1989.

Far from having abandoned the public use for which the proceedings were instituted, the property is still being used for a housing project for persons authorized to occupy such housing under existing legislation and regulations.

In the instant problem the McCrady-Rodgers Company when purchasing the involved lands took subject to the Government's possession and rights, under authority of law. The fact that a taking may prove a hardship upon an owner of property is no defense against the exercise of the power of eminent domain. United States v. 385 Acres of Land, Etc., D.C., 61 F.Supp. 746, 748-749. The government may acquire for public purposes such property as it may determine. United States v. 60,000 Square Feet of Land, Etc., D.C., 53 F.Supp. 767, 770. Futhermore, the Fifth Amendment to the Constitution does not prevent the United States and the landowner from entering into an agreement relating to the value of the land, such as was done in this action. The parties may bind themselves to a consideration which may be either greater or less than just compensation in the constitutional sense. Even the extension of a contract over a period of years does not exclude it or render it bad in a condemnation proceeding because the present cash value of such a contract can be determined. Mahowald v. United States, 8 Cir., 176 F.2d 509, 511; Scott v. United States, 6 Cir., 161 F.2d 1009, 1013; Oliver v. United States, 8 Cir., 155 F.2d 73, affirmed sub nom., Albrecht v. U. S., 329 U.S. 599, 603, 67 S.Ct. 606, 91 L.Ed. 532; Bank of Edenton v. United States, 4 Cir., 152 F.2d 251, 254.

In fact, the McCrady-Rodgers Company in the agreement entered into with the Bole heirs (September 30, 1948) for the purchase of the land in question, acknowledged, among other things, that it took subject to the rights of the Government; that the emergency still continued; that the Government was in possession for the emergency and three years thereafter.

The fact that the stipulation entered into by the Federal Government with the original owner, as to compensation, was subsequent to the McCrady-Rodgers Company purchasing the involved lands in no way invalidated said stipulation. For the McCrady-Rodgers Company executed and agreed to said stipulation as follows: "This stipulation is executed and agreed to by McCrady-Rodgers Company upon the condition, anything heretofore stated notwithstanding, that the annual just compensation shall obtain only until midnight July 24, 1950, the termination of the period authorized in these proceedings."

I believe the defendant's position is premised upon an erroneous assumption since I am satisfied the "period authorized in these proceedings" has not terminated; that the emergency under which the present taking was effected has been terminated neither by Presidential Order or Congressional enactment.

[11] All owners of real estate, regardless of when title was acquired, are governed by the amount of just compensation agreed upon at the date of the original declaration of taking. The amended declaration of taking did nothing more than extend the period of use in accordance with existing law, and must of necessity refer back to the time of original taking.

To hold otherwise would place the Government in a situation where the amount of just compensation could be questioned at any time. A real estate owner could circumvent the amount agreed upon for just compensation by a conveyance and sale of the premises to a third person.

There must be a time when the amount of sufficient compensation becomes definite and conclusive, and if the owners at the time of taking or at a subsequent time to the taking regardless of whether title has been transferred or not, in whole or in part, agree upon the amount with the Government, such has the same effect as judicial determination of the question. This cannot be altered by a subsequent owner where an amended declaration of taking is filed to extend the period of taking in accordance with existing law.

The rule of McCrady-Rodgers Company to show cause why it should not be permitted to intervene is granted.

The rule of the United States of America to fix the amount of just compensation for said premises in the sum of $1250.00 annually, without interest, beginning March 25, 1943 and continuing so long as the Government may be in possession of said land .

pursuant to said proceeding, including damages for the restoration of the land embraced in the proceedings at the termination of the Government's use, is made absolute.