**THEOBALD INDUSTRIES, Inc. v.
UNITED STATES.**

No 531–52.

United States Court of Claims.
Oct. 6, 1953.

Josephus C. Trimble, Washington, D. C., for plaintiff. Joseph P. McCarthy, Washington, D. C., was on the brief.

John R. Franklin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

PER CURIAM.

The plaintiff is engaged in the manufacture of fine tallow using fats, grease and bones in the process.

At defendant's invitation plaintiff submitted bids for the purchase of waste material consisting of such fats, grease and bones from designated army camps and installations.

Plaintiff submitted bids as follows:

|  | Per pound |
| --- | --- |
| Cracklings at | $0.07 |
| Bone Dust at | .091 |
| Kidneys at | .084 |
| Cooked Grease at | .1377 |
| Cooked Bones at | .043 |
| Raw Bones at | .051 |
| Raw Meat Trimmings at | .10 |
| Trap Grease at | .103 |

According to the allegations of plaintiff's petition which for the purposes of defendant's motion for summary judgment are taken as true, these prices were based upon tallow at 15½ cents per pound, which was the ceiling price at that time.

Plaintiff's bid was submitted and accepted on May 22, 1951.

Under the terms of the several contracts plaintiff was obligated to accept and pay for such material at the several camps, places and prices specified until June 30, 1952. Plaintiff during that period received 1,285,507 pounds of such material and paid therefor $96,094.80.

On January 8, 1952, the Office of Price Stabilization entered an order reducing the ceiling price of fancy tallow from 15½ to 10½ cents per pound, which price reduction plaintiff claims depressed the market and caused plaintiff to suffer a loss in the sum of $44,793.

Plaintiff claims that under Title II, First War Powers Act, 1941, as amended, it was and is entitled to have its contract-fixed prices modified so as to relieve it from the losses thus caused by the action of the Government.

Under Executive Orders 9001 and 10210, issued under the First War Powers Act [1] and the First War Powers Act, as amended,[2] the departments were given the discretionary power to modify defense contracts whenever it would facilitate the national defense.

The claim was considered by the Army Contract Adjustment Board, Department of the Army, and denied on the ground that the facts submitted did not show that any losses that may have been incurred impaired plaintiff's productive ability, and that in establishing ceilings the defendant was acting in its sovereign capacity.

We quote from the opinion in the case of Waller v. United States, 78 F.Supp. 816, 819, 114 Ct.Cl. 640, 655, as follows:

" * * * Congress authorized the amendments of these contracts whenever the Executive Department of the Government was of the opinion that their amendment would facilitate the prosecution of the war; it did not commit to the courts the determination of this question. It is well settled that a court has no jurisdiction to substitute its opinion for that of executive officers, in whom discretion is vested by Congress, at least where the judgment of the executive officer was honestly rendered."

As to responsibility for a sovereign act in imposing price ceilings, see Snyder v. United States, 82 F.Supp. 335, 113 Ct. Cl. 61.

█ In the light of all the facts alleged, read in connection with the decision of the Army Contract Adjustment Board, which is attached to the pleadings, we are unable to find that there was an abuse of discretion, or that the action taken was arbitrary, capricious or so grossly erroneous as to imply bad faith. On no other basis are we authorized to review an act of an official of the department in making a decision which involves the exercise of discretion.

█ Plaintiff also alleges that the regulations issued by the Department of Defense, pursuant to which the Army Contract Adjustment Board denied its claim, are invalid because they limit relief for losses on fixed-price contracts to contractors whose work is found to be essential to the national defense.[3] The language of the act quite clearly provides that the contract modifications authorized are to be effected only "whenever [the President] deems such action would

---

1. 55 Stat. 838, 50 U.S.C.A.Appendix § 601 et seq.; Executive Orders 9001, 10210, 50 U.S.C.A.Appendix, § 611 note.

2. 64 Stat. 1257.

3. No specific regulations are cited by plaintiff but the reference is apparently to 32 CFR §§ 438.1–438.5, the more pertinent parts of which are as follows:

"§ 438.2 *Standards governing exercise of authority.* (a) Any action taken under this section must be based on a finding that the national defense will be facilitated thereby.

"(b) The determination of whether in a particular case a contract amendment * * * will facilitate the national defense is a matter of sound judgment to be made on the basis of all of the facts in such case. Although it is obviously impossible to predict or enumerate all the types of cases with respect to which relief may appropriately be granted, examples of certain cases or types of cases where relief may be proper are set forth in this paragraph. Such enumeration is not intended to exclude other cases

facilitate the" national defense. That this legislation is concerned primarily with the facilitation of the national defense and not relief to individual contractors was recognized as an important factor in the passage of relief legislation such as the Lucas Act.[4] See Atlantic Corporation v. United States, Ct.Cl.1953, 112 F.Supp. 570, and legislative hearings there cited. This latter legislation afforded additional relief to holders of Government contracts, but it did not extend the scope of the statute now before us. We conclude that the regulatory requirement that the criterion for contract modification under this act shall be whether or not the national defense will be facilitated, is not in violation of the statute.

Defendant's motion is granted and the petition is dismissed.

where the circumstances are such as to warrant the granting of relief, and even in the enumerated cases other factors may result in a denial of relief.

"EXAMPLES

"(a) *Amendments without consideration.*

"(1) Where an actual or threatened loss on a defense contract, however caused, will impair the productive ability of a contract whose continued operation as a source of supply is found to be essential to the national defense, the contract will generally be equitably adjusted to the extent necessary to avoid such impairment of the contractor's productive ability.

"(2) Where a contractor suffers a loss (not merely a diminution of anticipated profits) on a defense contract as a result of Government action, the character of the Government action will generally determine whether any adjustment in the contract will be made and its extent.

\*   \*   \*   \*   \*

"(ii) When the action is not taken by the Government in its capacity as the other contracting party, but in its sovereign capacity, relief will generally not be granted. However, exceptional cases, depending on the nature of the action, the circumstances, and the effect on the contractor, may require an equitable adjustment in the contract when necessary to insure maximum cooperation and production in the national defense effort."

4. War Contract Hardship Claim Act, 60 Stat. 902, as amended by Section 37 of Public Law 773, 80th Cong., 2d Sess. 41 U.S.C.A. § 106 Note.