**BOLINDERS COMPANY, Inc.,**
v.
**The UNITED STATES.**
No. 65-56.

United States Court of Claims.
July 12, 1957.

Copal Mintz, New York City, for plaintiff.

Alfred J. Kovell, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff herein claims that it failed to receive the full amount to which it was entitled under an amendment to a contract for the supply of 228 diesel power units to the United States Army. It also claims that defendant arbitrarily denied a second application for a price increase under the same contract.

Plaintiff represented to the Secretary of the Army that it was losing money on its contract, and that it would have to default, unless the contract price was increased. Under the authority of section 201 of Title II of the First War Powers Act, as amended, 55 Stat. 838, 839, 64 Stat. 1257, 50 U.S.C.A.Appendix, § 611, the President authorized the Department of the Army to enter into, modify, or amend contracts whenever such action would "facilitate the national defense." Acting pursuant to the authority of this Act, plaintiff's application was granted, and the contract price was increased by the Army Contract Adjustment Board, acting for the Secretary, "in the amount of $169,246.-68 only." In the next paragraph of its determination, however, the Board added:

"b. To enable the contractor to obtain such increase, the contracting officer is authorized to execute a supplement to the contract increasing the unit price thereof from $3,-947 to $4,689.31 per unit, applicable to the entire contract quantity; namely, 228 units. * * *"

It is this last paragraph that is the basis of plaintiff's claim. The contracting officer did increase the total contract price by the amount of $169,246.68, but he did not increase the unit price of each item from $3,947 to $4,689.31. The reason for this is the following:

The original contract called for the delivery of 214 diesel power units, described as Power Unit P. E. 215, at a unit price of $3,947 f.o.b. destination, amounting to a total of $844,658. Additional items to be supplied increased the total contract price to $847,844.27, after deduction of one-tenth of one per cent for time discount. Several amendments to the contract were made during the year 1951. The total number of units was increased to 228, and the unit price was reduced, because of the elimination of certain items in the specifications, to $3,919.30. Later, inspection and shipping instructions were changed to call for inspection and delivery f.o.b. plant, Newark, New Jersey, rather than at destination. This resulted in a further decrease in the unit price for the 10 engines already delivered to $3,820.-70, and for the 218 to be delivered, to $3,842.20. Still later the specifications were amended to call for additional things at an increased cost of $17.50 per unit.

As a result of all these changes, the unit price of 10 of the diesel engines was decreased from $3,947 to $3,838.20, and the unit price of 218 of them was decreased from $3,947 to $3,859.70.

All of these changes in the unit price were agreed to by plaintiff. They were all made before the decision of the Contract Adjustment Board, but after the recommendation for an increase by the contracting officer.

The contracting officer's recommendation for an increase was from the original contract price of $3,947 to $4,689.31, or a total of $169,246.68. The Contract Adjustment Board concurred in the contracting officer's recommendation for a total increase of $169,246.68. It also concurred in his recommendation for an increase in the unit price from $3,947 to $4,689.31, but this was in error, because the Board overlooked the fact that after the contracting officer's recommendation the unit price had been decreased by agreement from $3,947 to $3,859.70 for 218 of the units, and to $3,838.20 for 10 of them.

Had the price been increased from $3,859.70 to $4,689.31 and from $3,838.20 to $4,689.31, the total increase would have considerably exceeded the limit of the increase specified by the Contract Adjustment Board, which was, in the words of the Board, "$169,246.68 *only*." [Italics ours.]

After the decision of the Contract Adjustment Board, the contracting officer amended the contract so as to give plaintiff the total increase authorized by the Board, but he did not increase the unit price to the top amount authorized by the Board because, as stated, this would have made the total increase much larger than that authorized.

The plaintiff claimed that this gave it less relief than the Board had intended to grant, and asked that the matter be resubmitted to the Board. This was done. In reply the Board instructed the contracting officer in part as follows:

"3. While the increase authorized by the Board in its decision of 10 August 1951 may not be sufficient to cover all the items of cost entering into the contractor's increased cost of performance, the record discloses that the amount authorized was the exact amount recommended by the Signal Corps contracting officer, which amount the Board believed would enable the contractor to complete the contract without impairment of its productive ability. The issue at the present time, therefore, is not whether the amount authorized by the Board was sufficient to make the contractor whole, but whether an additional amount is required to prevent impairment of the contractor's productive ability.

"4. The record is therefore returned to you herewith in order that the data normally required in support of an application for a contract price increase without consideration may be obtained and the matter resubmitted to the Board in accordance with its entitled subject; namely, as an "Application for Supplemental Relief."

The plaintiff made a second application for an increase in price on May 5, 1952. The contracting officer recommended denial. The Chief of Engineers found that plaintiff's continued operation as a source of supply was not essential to the national defense, and that the granting of relief would not facilitate the national defense, and he directed the contracting officer to deny plaintiff's application.

The matter was again brought to the attention of the Contract Adjustment Board. That Board found that even though the relief requested be granted, that the plaintiff would probably be forced into receivership or bankruptcy anyway, and concluded that the request for relief—

"* * * be denied, for the specific reasons that the Contracting Officer is not "firmly and clearly convinced that (such) action is necessarily and urgently required to facilitate the National Defense," nor can he find that denial "will impair the productive ability of a Contractor whose continued operation as a source of supply is found to be essential to the National Defense * * *.""

Thereafter, upon request for further consideration, the application for relief was again denied.

█ Except for the First War Powers Act, supra, plaintiff would of course have no basis whatever for asking an increase in the contract price, and the First War Powers Act was not passed for the benefit of contractors or for their relief from an unprofitable contract, but solely for the benefit of the nation as a whole, in order to facilitate the prosecution of the war. Atlantic Corporation v. United States, 112 F.Supp. 570, 125 Ct.Cl. 464, 480.

█ The Act committed to the sole discretion of the President the determination of whether or not an increase in the contract price would facilitate the prosecution of the war. His action, or the action of the agencies to whom he had

delegated the power granted, was not subject to review by the courts. Indeed, the Act conferred no rights on the contractor. Theobald Industries, Inc. v. United States, 126 Ct.Cl. 517; Waller v. United States, 78 F.Supp. 816, 114 Ct. Cl. 640; Centaur Construction Company, Inc. v. United States, 69 F.Supp. 217, 107 Ct.Cl. 498.

Plaintiff's claim, therefore, that the Army Audit Agency Report shows that the increase granted did not take into consideration certain items of increased costs is beside the point. The increase was not granted in order to make the contractor whole, but, in the words of the Board, "to prevent impairment of the contractor's productive ability." It was granted "to facilitate the national defense."

It results that plaintiff's motion for summary judgment must be and it is denied. Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.