MATTER OF VARA-RODRIGUEZ

In DEPORTATION Proceedings

A-15685290

*Decided by Board November 15, 1962*

An alien who entered the United States as a crewman is not statutorily ineligible for voluntary departure under section 244(f) of the Immigration and Nationality Act (as amended by Act of Oct. 24, 1962: PL 87-885).

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant remained longer than permitted.

The special inquiry officer directed the respondent's deportation and the case is before us on certification.

The respondent is a 44-year-old married male, native and citizen of Spain, who last entered the United States on or about September 29, 1960, at which time he was admitted as a nonimmigrant crewman for the period during which his vessel remained in port but not exceeding 29 days. He remained beyond that time without authority and has conceded his deportability on the charge stated in the order to show cause.

The issues to be determined are (1) whether a crewman is statutorily ineligible for voluntary departure under section 244 of the Immigration and Nationality Act (8 U.S.C. 1254) as amended on October 24, 1962 (76 Stat. 1247-1249; Public Law 87-885, 87th Congress) and (2) whether that relief should be granted in the exercise of discretion. The special inquiry officer concluded that the respondent was statutorily eligible for voluntary departure but exercised his discretion by denying that relief. The Service indicated that it did not wish to express an opinion on the question of whether the amendatory act does or does not preclude the granting of voluntary departure to a crewman, preferring to have this Board rule on the matter.

The statutory provision involved is section 4 of the Act of October 24, 1962, which amended section 244 of the Immigration and National-

113

ity Act. As originally enacted and as amended, subsections (a), (b), (c) and (d) have reference to suspension of deportation and subsection (e) to voluntary departure. Several changes were made in the subsections relating to suspension of deportation. As a result, reference in subsection (e) to paragraph (4) or (5) of subsection (a) was necessarily changed to paragraph (2) of subsection (a). With that exception, amended subsection (e) is identical with subsection (e) as it was originally enacted. In substance, subsection (e) authorizes the Attorney General, in his discretion, to "permit any alien under deportation proceedings * * * to depart voluntarily from the United States at his own expense in lieu of deportation" if he establishes good moral character for five years. This is limited by the language excluding certain aliens within the provisions of enumerated paragraphs of section 241(a) but even such aliens may be granted voluntary departure if they are eligible for suspension of deportation. Insofar as concerns subsection (e) itself, which is the only subsection dealing with voluntary departure, that relief may be granted to *any alien* under deportation proceedings with the one limited exception we have mentioned.

There was added to section 244 by the Act of October 24, 1962 a new subsection (f) reading as follows:

(f) No provision of this section shall be applicable to an alien who (1) entered the United States as a crewman; or (2) was admitted to the United States pursuant to section 101(a) (15) (J) or has acquired such status after admission to the United States; or (3) is a native of any country contiguous to the United States or of any adjacent island named in section 101(b) (5) : *Provided*, That the Attorney General may in his discretion agree to the granting of suspension of deportation to an alien specified in clause (3) of this subsection if such alien establishes to the satisfaction of the Attorney General that he is ineligible to obtain a nonquota immigrant visa.

A literal reading of subsection (f) would indicate that it applies, not only to the subsections dealing with suspension of deportation, but to subsection (e) which relates to voluntary departure. There may have been cogent reasons why Congress prohibited the granting of suspension of deportation to aliens who entered the United States as crewmen, or who were admitted under section 101(a) (15) (J) or who are natives of countries contiguous to the United States or adjacent islands. With regard to a crewman there was a possibility under prior law that such an alien, who had gained entry to the United States by the device of deserting his ship, could eventually obtain suspension of deportation and thus adjust his immigration status to that of a legal permanent resident. Such a possibility added incentive for other crewmen to desert their ships and remain illegally in the United States. On the other hand, voluntary departure confers no right to remain in this country permanently and is ordinarily advantageous to the Government because the alien must pay the expenses

relating to his departure, and the delays which sometimes result from enforced expulsion are eliminated.

It is a well-settled rule of statutory construction that a case may be within the meaning of a statute and not within its letter or within its letter and not within its meaning, and that a statute should be construed so as to carry out the intent of the legislature, although such construction may seem contrary to the letter of the statute. *Stewart* v. *Kahn*, 78 U.S. 493, 504 (1871); *Church of the Holy Trinity* v. *United States*, 143 U.S. 457 (1892).

We have carefully examined the legislative history of the statutory provision here involved, and we observe that there is a complete absence of anything which would indicate an intention of changing the original provisions of section 244(e) under which voluntary departure could be granted to *any alien* who met the requirements of that subsection. The discussion in the Senate as it appears in the Congressional Record of October 13, 1962 (Vol. 108, p. 22169) relates entirely to adjustment of status through suspension of deportation without any reference to the relief of voluntary departure. The Congressional Record of October 12, 1962 (Vol. 108, p. 22153) shows that in the House of Representatives Honorable Francis E. Walter, in explaining the bill, stated in part as follows:

> Basic principles of a sound immigration policy and our continuous concern to preserve the integrity of the very important international educational exchange program caused the conferees to exclude from the benefits of this legislation those aliens who enter the United States as crewmen or exchange visitors. Similar exclusion, with specified exceptions applies to natives of countries and islands contiguous or adjacent to the United States.
>
> If any alien in these classes becomes subject to deportation proceedings, *maximum relief which could be accorded him would be discretionary action by the Attorney General who may permit such alien to leave the United States* without prejudice to his future, lawful entry, provided that he or she leaves the United States promptly when ordered by the Attorney General to do so. (Emphasis supplied.)

We believe that Congressman Walter's remarks make it quite clear that it was the intention and understanding of Congress that the provisions of subsection (f) of section 244 applied only to the subsections pertaining to suspension of deportation and were not intended to apply to subsection (e) which authorizes the granting of voluntary departure. In view of the foregoing, it is our considered opinion that section 244(f) does not preclude the granting of voluntary departure to an alien who entered the United States as a crewman. The special inquiry officer concluded that the respondent was statutorily eligible for voluntary departure and apparently found that good moral character for five years had been established. We concur in these conclusions.

With respect to the remaining issue, it is obvious from this record that the respondent was not one who secured employment as a seaman for the purpose of coming to the United States and deserting his ship. He stated that he worked as a seaman for about 18 years and came to the United States on about 15 to 18 occasions, his first arrival being about 1944. He testified that he departed with his vessel each time except on his last arrival and an arrival in 1954 when he inadvertently failed to return to his vessel before its departure. At that time he remained ashore until 1956 when he was apprehended by the Service and was permitted to depart voluntarily. He testified that he has sufficient funds for his departure and is ready and willing to depart voluntarily at his own expense if that relief is granted. His wife and three children reside in Spain and are supported by the respondent. We conclude that this case merits the granting of voluntary departure, and this relief will be granted in the exercise of our discretion. Accordingly, the following order will be entered.

**ORDER:** It is ordered that the appeal be sustained; that the outstanding order of deportation be withdrawn; and that the alien be permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, and under such conditions as the officer-in-charge of the District deems appropriate.

*It is further ordered* that if the alien does not depart from the United States in accordance with the foregoing, the order of deportation be reinstated and executed.