**COMMONWEALTH ENGINEERING COMPANY OF OHIO**

v.

**UNITED STATES.**

No. 16–59.

United States Court of Claims.

Jan. 20, 1960.

H. A. Toulmin, Jr., Washington, D. C., for plaintiff. Folsom E. Drummond, Washington, D. C., and George W. Stengel, Dayton, Ohio, were on the brief.

Clare E. Walker, New York City, with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

Plaintiff's petition and exhibits attached thereto disclose that on May 20, 1952, plaintiff entered into a negotiated contract with the Air Force whereby the plaintiff agreed to design and fabricate a certain electronic device known as a noise spectrometer for the contract price of $95,711.72. The contract provided for upward or downward price revision, with a ceiling price of $104,412.70. By supplemental agreement, the total target contract price was increased to $102,447.-22 with a ceiling price of $111,148.29.

Subsequently plaintiff began performance of the contract and the time of contract delivery date was extended from time to time to June 26, 1956.

The apparatus was completed in July 1955 and tested in August and September 1955 by defendant's agents and found satisfactory. Further tests at Wright-Patterson Air Force Base, as provided for in the contract, revealed an erratic performance of the item and defendant refused to accept delivery. Plaintiff was advised that changes involving additional costs of $10,000 would be required.

The parties met at a conference to negotiate a settlement of the dispute. At that conference defendant's agents told plaintiff that the defendant desired to terminate the contract for the convenience of the Government and would accomplish completion of the contract at defendant's own laboratories if the plaintiff would agree to such termination and a reduction in contract price of $10,000. At that conference, plaintiff alleges, defendant's agent threatened that, if plaintiff failed to agree to this procedure, he would have the contract terminated for default and the contract would be relet and the contractor would be charged with any additional costs. Plaintiff alleges this would have bankrupted the claimant contractor.

After the conference plaintiff's president wrote a letter, dated April 3, 1956, to defendant's representatives setting forth the terms of a termination of the contract for the convenience of the Government. Another conference was held wherein plaintiff's president was told that the letter was unsatisfactory because of the inclusion of a right of contract price redetermination and appeal. The letter was then revised by striking out the portion objected to. Plaintiff then alleges defendant's agent told its president that he must submit a letter in accordance with the revision or he would terminate the contract for plaintiff's default. At this time, plaintiff alleges, it was not in default, having until June 26, 1956, within which to complete its contract.

Plaintiff claims that it acceded to claimant's demands for such termination under financial duress, but subsequently sought review of the action of defendant's agents by applying for relief to the Air Force Contract Adjustment Board in acordance with P.L. 921 (81st Congress, which amended the First War Powers Act of 1941, 55 Stat. 838, as amended by 64 Stat. 1257, 50 U.S.C.A. Appendix, § 601 et seq.).

On November 15, 1957, the Air Force Contract Adjustment Board advised plaintiff it did not have jurisdiction to review the case under the First War Powers Act of 1941, supra.

Plaintiff then filed an action in the District Court, which was dismissed for want of jurisdiction. This suit followed.

The case arises on defendant's motion to dismiss the petition on the ground that

the petition fails to state a claim upon which relief may be granted.

It is to be noted that plaintiff's petition alleges arbitrary action on the part of the Air Force Contract Adjustment Board in not taking jurisdiction of plaintiff's application for relief. Apparently plaintiff claims relief under the First War Powers Act, supra, and further claims this court can review under the provisions of 41 U.S.C.A. § 321, which is the so-called Wunderlich Act. This Act gives finality to decisions unless the same are "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or are not supported by substantial evidence."

■ However, as pointed out by the Government in its brief, the granting of such relief is not a matter of right, and denial of such relief gives rise to no legal or equitable claim. Cooper Tire & Rubber Co. v. United States, 150 F.Supp. 840, 138 Ct.Cl. 539; Bolinders Co., Inc. v. United States, 153 F.Supp. 381, 139 Ct. Cl. 677; Waller v. United States, 78 F. Supp. 816, 114 Ct.Cl. 640. Therefore, this could not be a compliance with the articles of the contract providing for claims and appeals as discussed later.

If the above were plaintiff's only allegation, its petition would fall on that premise alone. However, plaintiff apparently invokes the jurisdiction of this court under 28 U.S.C. § 1491, which is the Act giving this court its general jurisdiction. Under this circumstance we must look to the petition and contract to learn whether plaintiff's petition is sufficient.

Plaintiff seems to base its complaint on the proposition that the parties met and settled their dispute but that plaintiff was coerced into settlement by statement of Robert W. Logan, defendant's contracting officer. The statements complained of and allegedly attributed to Logan as set forth in the petition as the allegation of duress were "if claimant failed to agree to this procedure, he would have the contract terminated for claimant's default and the contract would be relet to another contractor and claimant charged with any higher price defendant would pay to the new contractor, which would have bankrupt [sic] the plaintiff."

Under this allegation the threshold question is whether this statement constituted duress. This question must be answered in the negative. As was stated in Fruhauf Southwest Garment Co. v. United States, 111 F.Supp. 945, 951, 126 Ct.Cl. 51, at page 62:

"It has become settled law that the mere stress of business conditions will not constitute duress where the defendant was not responsible for those circumstances."

As a matter of fact, something more must be present than threatened financial disaster. DuPuy v. United States, 67 Ct. Cl. 348, 381.

Plaintiff relies on the case of Universal Sportswear, Inc. v. United States, Ct.Cl., 180 F.Supp. 391. However, the Universal Sportswear case is distinguished on the facts. In Universal more than a threat of financial disaster was present; i. e., there was present the threat of termination for default; rejection of all raincoats, claim for damages, confiscation of all raincoats; threat to make plaintiff pay for the cost of material, excess costs in reletting and default of bond. Additionally, this came after a promise that plaintiff would be paid, which promise was later broken by the forced amendment of the contract. As a matter of fact, in Universal, the contractor was forced to do additional work under the contract and nothing could be done about it. Here the contract was either terminated by agreement or there was no agreement. In either event, as pointed out later in this opinion, the Government was within its rights.

If, as alleged, defendant's agent threatened to terminate the contract for default, and plaintiff was in default, then of course the defendant was threatening to do what it had a right to do. Beatty v. United States, Ct.Cl., 168 F.Supp. 204, and cases cited therein.

If, as alleged, plaintiff was not in fact in default at that time, then the settlement if procured by duress could only amount to a unilateral decision of the contracting officer. In these circumstances the defendant still had the right to terminate for convenience of the Government, under either article 11(e) or article 21(a) of the contract.

Article 11(a) provides for termination for default of the contractor.

Article 11(e) of the contract provides:

"If, after notice of termination of this contract under the provisions of paragraph (a) of this clause, it is determined that the failure to perform this contract is due to causes beyond the control and without the fault or negligence of a Contractor pursuant to the provisions of paragraph (b) of this clause, such Notice of Default shall be deemed to have been issued pursuant to the clause of this contract entitled "Termination for Convenience of the Government," and the rights and obligations of the parties hereto shall in such event be governed by such clause. (*Except as otherwise provided in this contract, this paragraph (e) applies only if this contract is with a military department.)*"

Termination for convenience of the Government was exactly what the Government wanted. In fact, plaintiff's petition alleges "at this conference defendant's agents told claimant's agents that they desired to effect a termination of the contract for the convenience of the Government, * * *."

Article 21(a) reads as follows:

"The performance of work under this contract may be terminated by the Government in accordance with this clause, in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interests of the Government. Any such termination shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which performance of work under the contract is terminated, and the date upon which such termination becomes effective."

Therefore, when the Government told plaintiff it was terminating for the convenience of the Government, which is what, from the allegations and exhibits, we believe occurred, the Government was well within its rights under the contract.

■ Under these circumstances article 21(d) of the contract permits the parties to agree upon the amount to be paid the contractor. In the event of failure to agree, the contracting officer has the right under article 21(e) to determine the amount, if any, due the contractor. Article 21(g) provides for an appeal by the contractor under the "Disputes" clause, provided the contractor files a claim as provided for in paragraph (c) of article 21. Paragraph (c) provides for filing a claim within two years from the effective date of termination, unless one or more extensions in writing are granted.

So in this case, since the Government asked for something for which it had a legal right, the threat could not amount to duress and the resulting agreement is legal and binding. Inasmuch as we believe the agreement is binding, no further discussion is necessary. However, other reasons are present which show the invalidity of plaintiff's claim and are discussed below.

■ Since the termination was for the convenience of the Government and the resulting determination of the amount due was under article 21(e), plaintiff had the duty to appeal the decision. The contract then further provides in article 21(g) that the contractor must submit a claim within a certain time.

Plaintiff failed to file such a claim and under article 21(g) the amount found by the contracting officer is the only amount the contractor would be entitled to. Furthermore, even had plaintiff filed such a claim, no appeal was ever taken by plaintiff under the "Disputes" clause as provided and consequently plaintiff had

**400**

failed to exhaust its administrative remedy. United States v. Callahan Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49; United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039.

Accordingly, we must hold that plaintiff has received all its rights under the contract, and the petition fails to state a claim upon which relief may be granted.

Defendant's motion is granted, and plaintiff's petition is dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, LITTLETON, Judge (Retired) and MADDEN, Judge, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.