LORAL CORPORATION
v.
The UNITED STATES.
No. 253-69.

United States Court of Claims.
Dec. 11, 1970.

Joseph Sachter, Scarsdale, N. Y., attorney of record, for plaintiff. Alvin A. Simon, New York City, of counsel.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S AND DEFEND-ANT'S MOTIONS FOR SUMMARY JUDGMENT

LARAMORE, Judge.

This case represents the third attempt by plaintiff to secure compensation in addition to that provided for under certain contracts with the defendant. The first case, Loral Electronics Corp. v. United States, 387 F.2d 975, 181 Ct.Cl. 822 (1967), hereafter referred to as *Loral I*, presents most of the facts upon which this claim arises, with certain exceptions to be indicated hereafter. In that case, Loral Electronics Corp. (now known as Loral Corporation) was successful in its attempt to overturn a decision by the Armed Services Board of Contract Appeals (Loral Electronics Corp., 1964 BCA ¶ 4439) and in so doing it was found by this court that plaintiff was entitled to reimbursement from the defendant, under certain cost-plus-fixed-fee contracts, for rental payments for the use of a building in which the contracts in question were being performed. *Loral I, supra.*

Following the *Loral I* decision, plaintiff sought to amend and supplement its pleadings in that case so as to include more than the five Navy contracts specifically referred to in *Loral I*. The court, *per curiam*, denied plaintiff the right to supplement the pleadings in *Loral I* and the reasons for said denial are found at Loral Electronics Corp. v. United States, 409 F.2d 578, 187 Ct.Cl. 499 (1969), hereafter referred to as *Loral II*.

Briefly stated, the court found in *Loral II* that the *Loral I* decision related only to the five contracts that were specifically referred to in the petition in this court which were the same five that were before the ASBCA. The court went on to point out that " * * * plaintiff could have brought new and independent suits on these other contracts to which it now points." (*Loral II, supra,* 409 F.2d at 580–581, 187 Ct.Cl. at 503.) Pursuant to the suggestion noted above, plaintiff now brings this action to recover on numerous contracts entered into with the

government between 1962, when *Loral I* was started, and 1967, the date *Loral I* was decided. These contracts differ from those to which the court directed its opinion in *Loral I* in that the contracts upon which this case is built are *negotiated fixed-price contracts*. Another difference of minor significance is that in *Loral I* the contracts involved were all performed in the Bronx section of New York City at 825 Bronx River Avenue, while in this case the numerous contracts were performed not only at the aforementioned location, but also at 1440 Story Avenue, which is also in the Bronx. The facts of this case further show that the plaintiff occupied both buildings under leases which included, in both cases, options to purchase the premises at the end of the lease term.

These options, which were discussed in *Loral I*, caused the defendant to treat plaintiff as the equitable owner of both buildings and as a consequence defendant refused to accept plaintiff's rental expense as an item of reimbursable cost in the cost-plus-fixed-fee contracts. In *Loral I*, this court decided that, as applied to the five cost-plus contracts, the government's position was incorrect and, therefore, rental expense, as opposed to "cost of ownership" should be allowed. (*See,* Loral I, 387 F.2d at 977, 181 Ct.Cl. at 826, (1967).)

■ However, because this case presents the question under significantly different facts, we cannot find that the government must reimburse the plaintiff for rental expenses incurred in the performance of the fixed-price contracts here in question. This decision is based on the initial premise that this court will decide each case as it is presented and only within the confines of the facts as developed. Therefore, we will not pass on issues that are not presented by the facts of the case. This position was aptly stated in Loral II, 409 F.2d at 580, 187 Ct.Cl. at 502–503:

In the opinion [*Loral I*] we referred expressly to the five Navy cost-plus contracts which we were considering,

pointing out that the court was "concerned in the present case" with those specific agreements. 181 Ct.Cl. at 824, 825, 829, 387 F.2d at 976, 979. It is indisputable that we adjudicated only those five contracts (though of course our opinion would be a precedent for administrative or judicial resolution of similar issues under similar agreements). Without amendment, the petition will not support any judgment relating to contracts other than those five. [footnotes omitted.]

Therefore, in this case we need not take *Loral I* as a precedent for the holding here because this case does *not* present "similar issues under similar agreements." This case must stand or fall upon its own merits and what we decided in *Loral I* in relation to the five cost-plus contracts has no application to the fixed-price contracts here in question.

The plain and simple reason this court does not feel it is bound by *Loral I* is that the contracts in issue in this case present a wholly different situation than the one considered in *Loral I*. In *Loral I*, the contracts were the type that are subject to negotiation throughout their existence (*see*, ASPR § 3.405-5, and Loral I, 387 F.2d at 976, 181 Ct.Cl. at 824) and since an impasse was reached in negotiations for allowable costs the parties could utilize the "Disputes" clause to resolve their differences (*see*, *Loral I*, *supra*). However, in this case the type of contracts in question are *firm fixed-price* contracts and once the price was agreed upon, that price remains fixed and it is not subject to further negotiation, unless otherwise provided in the contract. ASPR § 3.404-1 and § 3.404-2. In this case, plaintiff did not "otherwise provide" for adjustment of the fixed price, nor did the plaintiff preserve any objections to the Navy auditors' characterization of the building overhead. Therefore, at the risk of being repetitious, we must again point out that the factual differences in this case from *Loral I* as to the contracts involved necessitate the conclusion that plaintiff cannot rely on our decision in *Loral I* to support his recovery here.

Furthermore, even assuming that the Navy auditors disallowed the rental expense when plaintiff was in the preparation of the bids on the firm fixed-price contracts, the government submits several affidavits by contracting officers indicating that in the final stages of each contract plaintiff never discussed its objection to the characterization of the building overhead. This is significant to the court in that it points out that plaintiff did not endeavor to preserve its objections for final determination in relation to the fixed-price contracts. In reply, plaintiff directs the court to the letter of November 8, 1962 from the Department of the Navy, and asserts that this letter, which is in response to plaintiff's letter objecting to the disallowance of rental expense, is an admission by the Navy auditors that plaintiff's objections to the withholding of rental expenses were directed not only to the cost-plus contracts but also the fixed-price contracts. Therefore, plaintiff contends, the objections were preserved and plaintiff did not acquiesce in the defendant's treatment of the building overhead.

This court has great difficulty in attaching any significance to that correspondence other than as it relates to the cost-plus type of contracts which were the subject of litigation in *Loral I* or cost-plus contracts upon which future withholdings would be made. We, therefore, can find no basis upon which to conclude that plaintiff saved his exception to the denial of rental expense in reference to the fixed-price contracts. For examples of situations wherein the aggrieved contractor preserved its objection while entering into the contract, *see*, Lockheed Aircraft Corp. v. United States, 426 F.2d 322, 192 Ct.Cl. 36 (1970); Chris Berg Inc. v. United States, 426 F.2d 314, 192 Ct.Cl. 176 (1970).

■ Before discussing plaintiff's alternative grounds for relief it should be pointed out that the defendant asserts that this court lacks jurisdiction to hear

plaintiff's claim because it is based on a theory of quasi-contract for prevention of unjust enrichment. We feel that plaintiff's claim, in all respects, is based upon the express contracts here in question and we do not consider it necessary to discuss jurisdiction in terms of the difference between an implied-in-fact and an implied-in-law contract. Based on the determination that plaintiff's claim arises under the express contracts, we are satisfied that this court does in fact have jurisdiction. Nevertheless, in all due respect to the defendant's assertion of lack of jurisdiction, we must further point out that once plaintiff interposes mistake as an alternative ground for relief, this in turn brings up the jurisdiction question. However, since we find that there was no mistake upon which rescission may be granted, there is no basis for recovery on a restitution theory under an implied-in-law contract. Therefore, the court need not elaborate further on the question of jurisdiction because we are dealing purely with express contracts.

■■ As for the aforementioned contention that plaintiff is entitled to reimbursement on the basis of a mistake in the bids, even assuming that there was a mistake made, the law on mistake is clearly against the plaintiff. *See*, Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498 (1967); Wender Presses, Inc. v. United States, 343 F.2d 961, 170 Ct.Cl. 483 (1965); C. N. Monroe Mfg. Co. v. United States, 143 F.Supp. 449 (E.D. Mich.1956). Explaining further, it must first be assumed that the mistake made, if any, was made by the government alone since plaintiff contends that it knew from the beginning that the rental expense was the proper item of cost and not the cost of ownership. Therefore, since we are dealing with a unilateral mistake, "[i]t is plain that plaintiff may recover only if defendant's responsible officials knew or should have known of the mistake at the time the bid was accepted." *Wender Presses, Inc., supra,* 343 F.2d at 962, 170 Ct.Cl. at 485. *See also,* Ramey & Erlewine, Mistakes and Bailouts of Suppliers

Under Government Contracts, 39 Cornell L.Q. 634 (1954).

We must conclude, however, that plaintiff cannot prevail on the theory of mistake since, in this case, the responsible officers, be they the auditors or the contracting officers, did not know, nor could they be expected to know, of any mistake in the bids submitted by the plaintiff. The auditors could not know because the question of rental expense was being tried in this court at the time of negotiations on the contracts here in question. Furthermore, the contracting agents could not know of any mistake since plaintiff's bids did not indicate how the building expense was computed. Moreover, it appears that even if this court were inclined to find that a mistake was made at the time of contracting, plaintiff assumed all risks of the consequences of that mistake and, therefore, cannot now be heard to complain. This position is set forth in 3 CORBIN ON CONTRACTS § 598 (2d ed. 1960) where, in reference to the contract law on mistake, Professor Corbin states at pages 585–586:

> * * * The same result obtains in any case where the risk of the existence of some factor or of the occurrence of an event is consciously considered in agreeing upon terms. There is no mistake; instead there is awareness of the uncertainty, a conscious ignorance of the future. This is why an ordinary compromise of a doubtful or disputed claim is not subject to rescission when one of the parties turns out to have been correct in his assertions and the other incorrect * * *.

*See also,* 39 Cornell L.Q., *supra,* at 651.

■■ The third and final ground upon which plaintiff relies in its effort to secure further payments under the contracts in question is that of duress. Plaintiff contends that to refuse the terms as proposed by the defendant would have meant "financial suicide" since plaintiff dealt almost exclusively with the government. Plaintiff, therefore, had no choice but to accept the contracts "as prepared and tendered" by the gov-

ernment and that as a consequence it was coerced into acceptance of unconscionable terms.

As a foundation for this assertion, plaintiff again directs the court to the letter of November 8, 1962 from the Navy auditors. Plaintiff asserts that said letter indicated that there was no alternative open to the defendant's authorized agents other than to withhold rental expense once the disallowance has been issued. This in turn indicated to plaintiff that the defendant would tolerate neither further negotiation on the matter nor qualifications to the contract.

Again this court has difficulty in agreeing with the plaintiff for basically the same reason we stated earlier. It is quite clear to us that the letter in question referred only to cost-plus-fixed-fee contracts. One need only read the first paragraph of said letter to understand our position:

1. Recently your representatives paid a visit to the Auditor General of the Navy to discuss whether or not amounts that have been withheld under your navy *cost-type* contracts and are presently the subject of appeal and review briefs now under our consideration could be released until such time as the decisions on the briefs were issued. You were particularly concerned with the withholdings related to the question of rentals in the current appeal and review brief and also with anticipated larger withholdings that may occur while the brief is being considered. [Emphasis added.]

Not only does the emphasized portion refer to "cost-type contracts" but also the connotation of "withholdings" indicates to this court that the letter was not intended to apply to fixed-price contracts.

Again giving plaintiff the benefit of any doubts there may be, if we again assume, *arguendo*, that the defendant would tolerate no further negotiation on the rental expense and, therefore, plaintiff had to accept the contracts without same or face "financial suicide," the law again is against plaintiff. It is clear that the type of pressure to which plaintiff was subjected does not constitute duress for purposes of recovery.

In discussing the law on duress, we feel that Fruhauf Southwest Garment Co. v. United States, 111 F.Supp. 945, 126 Ct.Cl. 51 (1953), even though it deals with a subsequent modification, is the clearest presentation of the position of this court. In that case, 111 F.Supp. at 951, 126 Ct.Cl. at 62, we stated in respect to economic duress or business compulsion that:

> * * * In order to substantiate the allegation of economic duress or business compulsion, the plaintiff must go beyond the mere showing of a reluctance to accept and of financial embarrassment. There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities.

Moreover, we must again point out that plaintiff's failure to preserve its objection to treatment by the defendant in respect to the rental expense destroyed any hope it may have had for recovery on the grounds of duress. *See,* Silliman v. United States, 101 U.S. 465, 25 L.Ed. 987 (1879), aff'g, 12 Ct.Cl. 433 (1876), holding that if the injured party remains silent and fails to assert his rights, he cannot thereafter be heard to complain that the contract terms were forced upon him. *See also,* John Arborio Inc. v. United States, 76 F.Supp. 113, 110 Ct. Cl. 432 (1948), holding that a subsequent claim of duress is seriously weakened by the contractor's silence at the time the work was ordered. *See also,* Mid-State Products Co. v. Commodity Credit Corp., 196 F.2d 416 (7th Cir. 1952); John J. Harte Co. v. United States, 91 F.Supp. 753, 117 Ct.Cl. 309 (1950), (a "take-it or leave-it" situation wherein the court could find no duress); Commonwealth Engineering Co. of Ohio v. United States, 148 Ct.Cl. 330, 180 F.Supp. 396 cert. de-

nied, 364 U.S. 820, 81 S.Ct. 55, 5 L.Ed.2d 50 (1960).

In view of the foregoing authorities on the question of duress, we must conclude that plaintiff was not subjected to coercion or duress of the type redressable by this court. Having heretofore also found that there is no other basis upon which plaintiff can prevail in this action, we conclude that plaintiff's motion for summary judgment should be, and the same is hereby, denied. Defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.