**ADVANCE BANK, F.S.B., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–829C.**

United States Court of Federal Claims.

April 18, 2002.*

---

\* This order originally was filed on December 3, 2001. An edited and reorganized order is being issued for publication in response to defendant's March 13, 2002 request.

**1.** Appointed as Judge Diane Gilbert Weinstein.

Robert J. Sharfman, of Chicago, IL, for plaintiff.

Colleen A. Conry, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC; Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Deputy Director; Jeanne Davidson, Deputy Director, for defendant.

### Opinion and Order

SYPOLT [1], Judge.

Before the court are so-called "short form" cross-motions for partial summary judgment on the issue of liability for plaintiff's breach of contract claim.[2] As directed at the status conference held on May 31, 2001, the parties also filed supplemental memoranda on liability in light of the decision in *California Federal Bank, F.S.B., v. United States,* 245 F.3d 1342 (Fed.Cir.2001), *petition for reh'g and for reh'g en banc denied,* 2001 U.S.App. LEXIS 17337 (Fed.Cir. July 10, 2001) (Nos.99–5108, 99–5119), *cert. denied,* —— U.S. ——, 122 S.Ct. 920, 151 L.Ed.2d 884 (2002) (Nos.01–592, 698). After assignment of the case to this judge on December 15, 2000, the parties briefed cross-motions for partial summary judgment on damages.

The motions on liability are denied. Decision on the motions regarding damages is deferred until the liability decision is made, which shall occur after completion of a mini-trial scheduled, pursuant to a separate order issued on this date, for January 2002.

### Facts

This case, one of about 120 cases related to *United States v. Winstar Corp., et al.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), and now pending before the court, resulted from the crisis in the savings and

**2.** "Short form" motions for summary judgment refer to the motions on liability for breach of contract in the cases related to *United States v. Winstar Corp., et al.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), that were permitted under the *Winstar* Omnibus Case Management Order of September 18, 1996.

loan industry beginning in the early 1980s. The reasons for the downward spiral in the financial condition of the savings and loan industry and the efforts of federal regulators to prevent wide-scale savings and loan insolvencies, are detailed in the Supreme Court's *Winstar* decision. *See also Winstar Corp., et al. v. United States*, 64 F.3d 1531 (Fed.Cir. 1995). The Supreme Court's decision also describes the history of Congress' enactment in 1989 of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101–73, 103 Stat. 183, and its purpose of preventing future such crises in the savings and loan industry.

Plaintiff's predecessor, Homewood Federal Savings and Loan (Homewood) acquired Public Federal Savings and Loan (Public) on September 16, 1982, after the supervisory agents of the Federal Home Loan Bank Board (FHLBB) had notified Public of the need, due to the bank's weakened financial condition, to effectuate a "supervisory merger."[3] Homewood subsequently submitted a formal merger application to the FHLBB, and later amended it to include a request for certain forbearances commonly allowed at the time. The FHLBB provisionally approved the merger application in a January 11, 1983 letter, conditioning final approval on Homewood's obtaining a letter from its accountants.[4] The letter also granted Homewood request for a limited, five year forbearance for purposes of satisfying the regulatory net-worth calculation.[5] The new combination

received final confirmation of approval on March 19, 1984.

Unlike in *Winstar*, the government did not sign an assistance agreement, a forbearance agreement (of more than 5 years), a supervisory action agreement, or any document incorporating by reference (by way of an integration clause or otherwise) an agreement to permit long-term amortization or inclusion of goodwill in plaintiff's assets for regulatory capital purposes.

### *Standard of Review*

Under Rule 56(c) of the Rules of the United States Court of Federal Claims, a motion for summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *T & M Distributors, Inc. v. United States*, 185 F.3d 1279 (Fed.Cir.1999).

However, there are competing considerations: "an improvident grant [of summary judgment] may deny a party a chance to prove a worthy case and an improvident denial may force on a party and the court an unnecessary trial." *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146–47 (Fed. Cir.1983). While courts have held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action,'" *Celotex*

---

3. A supervisory merger is an acquisition, encouraged by the FHLBB as an alternative to liquidation, by a financially healthy thrift or outside investor of an ailing institution whose liabilities outstripped their assets. *Winstar*, 518 U.S. at 847–848, 116 S.Ct. 2432.

4. The letter states, in relevant part:
   Not later than sixty days following the effective date of the merger, the Resulting Association shall furnish an opinion from its independent accountant that (a) indicates the justification under generally accepted accounting principles for use of the purchase method of accounting for the merger with Public Federal, (b) specifically describes, as of the effective date, any goodwill or other intangible assets, or any discount of assets, arising from the merger to be recorded on the Resulting Association's books, and (c) substantiates the reasonableness of the amount attributed to goodwill

or other intangible assets, and the reasonableness of any discount of assets and of the resulting amortization periods and methods.
Pl.'s App. to "short form" Mot. Summ. J., Ex. 7 at 2.

5. The letter states, in relevant part:
   For purposes of the resulting institution's satisfaction of the net-worth calculation of Section 563.13(b) of the Insurance Regulations, [the supervisory agent] will exclude, for up to a five-year period, operating losses on acquired assets, capital losses sustained by the resulting institution upon disposition of acquired assets, acquired scheduled items, and the amount of either: (a) the net-worth deficiency at the date of merger or (b) the liabilities including averaged liabilities, of the acquired institution.
Pl.'s App. to "short form" Mot. Summ. J., Ex. 7 at 2.

*Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted), they also have held that a trial court should act cautiously in granting summary judgment and may deny it when there is reason to believe that the better course would be to proceed to a full trial, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A more emphatic enunciation of the need for caution in some RCFC 56(c) circumstances appears in a Federal Circuit case, which warns that, although speedy and inexpensive, summary judgment at times may be a "lethal weapon" capable of "overkill." *SRI Intern. v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

It also is established that, in deciding a summary judgment motion, the evidence of the non-movant must be believed and all justifiable inferences drawn in its favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and that, in deciding cross-motions, grant of the motion in favor of one party nonetheless must satisfy the requirement that all justifiable inferences be drawn in favor of the losing party. *Murphy Exploration & Production Co. v. Oryx Energy Co.,* 101 F.3d 670, 673 (Fed.Cir.1996).

In ruling on a motion for summary judgment, the judge "must be guided by the substantive evidentiary standards that apply to the case." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, before a party may prevail on a breach of government contract claim, it must demonstrate the existence of the basic elements of a contract, *i.e.:* mutual intent to contract, including offer and acceptance based on a meeting of the minds; consideration; and an individual with actual authority to bind the government. *Cf. California Federal,* 245 F.3d at 1346 (citing *Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir. 1999)). If the contract terms are ambiguous, and require the weighing of external evi-

dence, the matter is not suitable for summary resolution. *Beta Systems, Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988).

### DISCUSSION

The central issue in this liability dispute is whether the FHLBB's merger approval was a contract permitting Homewood to use the purchase method of accounting[6] in meeting its minimal capital requirements under the federal banking regulations. If so, under *Winstar,* the contract was breached by the enactment of FIRREA.

Whether a contract exists in this case, however, depends on all the facts and circumstances surrounding the acquisition of Public by Homewood and, most importantly, the role of the government in that transaction. Nothing in the *Winstar* and *California Federal* decisions supports the proposition that every savings and loan merger approved by the FHLBB during the period in question bound the government to a specified goodwill treatment (and was breached by FIRREA) regardless of whether there was a bargained-for exchange with the government.

The Supreme Court in *Winstar* did not find that a contract was formed in all such cases or even in that case, merely assuming that one was created based on the decisions of the courts below. In fact, the Supreme Court expressly directed that in *Winstar*-related litigation a court should apply "ordinary principles of contract construction and breach that would be applicable to any contract between private parties." *Winstar,* 518 U.S. at 871, 116 S.Ct. 2432. Thus, the existence of a contract between plaintiff and defendant is not a solely legal issue. *See also Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed.Cir.1998) (holding that whether a contract exists is a mixed question of law and fact).

Whether there was a meeting of the minds and, if so, the terms and conditions of any

---

**6.** Under generally accepted accounting principles (GAAP) a merged entity not wishing to use the pooling method of accounting (in which the two former entities' assets and liabilities are fully merged) instead may use purchase accounting. Under the latter method, the excess of the purchase price over the fair value of the assets is treated as an intangible asset, called goodwill, which may be amortized against income over a term of years. Changes to the accounting principles in 1970 extended the amortization period to 40 years. *Winstar,* 518 U.S. at 848–849, 116 S.Ct. 2432.

agreement indisputably are factual questions. *E.g., Penn–Ohio Steel Corp. v. United States,* 173 Ct.Cl. 1064, 354 F.2d 254 (1965). *See also Crellin Technologies, Inc. v. Equipment-lease Corp.,* 18 F.3d 1 (1st Cir.1994); *Ronan Associates, Inc. v. Local 94–94A–94B, Intern. Union of Operating Engineers,* 24 F.3d 447 (2nd Cir.1994); *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman,* 795 F.2d 291 (3rd Cir.1986); *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.,* 541 F.2d 584 (6th Cir.1976).

The heavy reliance on, and frequent reference to, the factual record by the *Winstar* and *California Federal* courts, *see Winstar,* 518 U.S. at 860–868, 909, 116 S.Ct. 2432; *California Federal,* 245 F.3d at 1344–1348, underscore the need for a fact-intensive and case-specific analysis in each of these cases.

While the Federal Circuit in *California Federal,* in imposing liability based on *Winstar,* held that the absence of an assistance agreement or a supervisory action agreement between the government and the merging entities did not, without more, preclude a finding that a contract existed, it nevertheless emphasized that some evidence would be necessary to establish an agreement: " 'the factual records of individual cases show intent to contract with the government for specified treatment of goodwill...' " *California Federal,* 245 F.3d at 1347 (quoting *California Federal Bank, et al. v. United States,* 39 Fed.Cl. 753, 773 (1997)).

The government has distinguished the basic liability determination in *California Federal* on the grounds that plaintiff here did not negotiate with the government regulators and that the January 11, 1983 conditional approval letter from the FHLBB did not expressly allow for the specified treatment of goodwill.[7]

Plaintiff contends that the existence of negotiations is not material to the question of contract formation, that the conditional approval letter does refer, albeit indirectly, to the specified accounting treatment, that the lack of any express promise in the conditional approval letter is insignificant, and that the

documents in the record entitle it to judgment as a matter of law.

This court concludes that one cannot infer liability from the mere existence of a statement in the January 11, 1983 conditional approval letter requiring an accountant's letter consistent with GAAP since virtually all business entities are required to comply with such standards. The conditional approval letter here contrasts starkly with the forbearance letters issued in *California Federal,* which, following a detailed description of purchase accounting and the periods for goodwill amortization and accretion of discount, expressly stated:

> Notwithstanding any change in generally accepted accounting principles or interpretation thereof, the Resulting Association may report for any and all reports to the FHLBB its financial condition and operations in accordance with the accounting method described in the preceding sentence.

Pl.'s Ex. 11 at 2–3; 24 at 2–3, *California Federal Bank v. United States,* 39 Fed.Cl. 753 (1997) (No. 92–138C).

Plaintiff also argues that the government agreed to allow Homewood to count goodwill toward regulatory capital because the January 11, 1983 letter incorporates by reference the Plan and Agreement of Merger, which, in turn, prescribes the goodwill amortization period. Pl.'s Resp. to Def.'s Supplemental Mem. on Liability in Support of Def.'s Mot. for Partial Summ. J., at 3.

However, the approval letter conditions approval on the merger being effected in accordance with a document—the Plan and Agreement of Merger—negotiated between the merging parties only and without the government's involvement. Moreover, the Plan and Agreement of Merger did not bind or purport to bind the government to any regulatory forbearance nor does it prescribe a particular goodwill treatment, conditioning the merger solely on a treatment approved by the government and/or by independent accountants of the resulting association.

---

7. Defendant also contends that the government representative who issued the January 11, 1983 letter lacked authority to enter into contracts.

Finding other grounds to deny plaintiff's motion for summary judgment, the court considers it unnecessary to decide this issue.

Again, the court has uncovered no reference whatsoever, conditional or otherwise, to the government approving plaintiff's use of supervisory goodwill to satisfy any regulatory capital requirements beyond the five-year forbearance period.

Plaintiff's offer of evidence of separate, express approval of the supervisory goodwill accounting treatment consists of Homewood's president, Mr. James Wolfe's, conclusory and unilateral affidavit stating that the merging parties understood that the government offered and agreed to the contended-for treatment of goodwill.

The government denies making contractual representations, maintaining that the approval of the merger was a mere regulatory function, carried out pursuant to Sections 546.2 and 545.14 of the Rules and Regulations for the Federal Savings and Loan System and delegated to supervisory agents under 47 *Fed.Reg.* 8152. In his deposition, Mr. Allen Dermody, the supervisory agent at the FHLBB involved in this acquisition, stated that the government did not initiate discussion of sanctioning the forty-year accounting treatment. However, although he declined to explain the specifics, he indicated that this treatment was a "possible alternative." App. to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss and for Partial Summ. J., at 12, 13. At trial, Mr. Wolfe's and Mr. Dermody's testimony may be evaluated by the fact finder.

The factual circumstances in *California Federal* thus appear to be distinguishable. *See Loral Corp. v. United States,* 193 Ct.Cl. 473, 434 F.2d 1328, 1329, 1330 (1970) (holding that a previous case involving similar, but factually distinguishable, contracts is not precedential because each "case must stand or fall upon its own merits" and the "court will decide each case as it is presented and only within the confines of the facts as developed"). Unlike here, the plaintiff in *California Federal* expressly requested the specified accounting treatment either in the merger application or in a letter to the regulators who, in turn, provided a letter expressly allowing such treatment. No such express correspondence has been presented in this case. In fact, the only submitted documents mentioning the forty-year amortization of goodwill appear to have been intended solely for the internal use of one or the other party and never to have been communicated between them.

Finally, if Homewood and Public agreed to merge without governmental entreatment (receiving only routine merger approval) and solely in order to minimize each others' financial losses, this case may be distinguishable from other *Winstar*-related cases for lack of a bargained-for exchange. *See Winstar Corp., et al. v. United States,* 64 F.3d 1531, 1541, 1542 (Fed.Cir.1995) (supporting the finding that a contract existed by evidence of negotiations, lack of other motivating factors for the acquisitions, and other circumstances surrounding the transactions). *See also Fifth Third Bank of Western Ohio, et al. v. United States,* 52 Fed.Cl. 264, 273–78 (2002) (J. Miller) (denying plaintiffs' short-form motion for summary judgment on liability in a *Winstar*-related case on the ground that the facts are materially distinguishable from the *Winstar* and *California Federal* cases).

■ The ambiguous terms of the purported agreement also militate against a summary decision that a contract existed, since a contract may not be formed if a material difference of understanding of particular terms has prevented the manifestation of mutual assent. Restatement (Second) of Contracts § 20 cmt. c (1981). *See National By-Products, Inc. v. United States,* 186 Ct. Cl. 546, 405 F.2d 1256, 1260 (1969) ("[If] the Government's statement was subject to two reasonable interpretations, one that it was an undertaking, the other that it was a prediction, and the parties chose opposite ones, then there is no contract covering that representation, unless one side either knew or should have known the meaning attached to it by the other.").

■ Given the marked differences in the apparent terms of this contract and those in *Winstar* and other published *Winstar*-related cases, the court concludes that these prior decisions do not resolve the question of whether a contract exists in this case and that various disputed factual issues material

to the question of intent to contract appear on the record before the court and must be resolved by evidentiary hearing:

- whether the government played any substantive role in arranging the merger, Pl.'s Statement of Genuine Issues and Proposed Findings of Uncontroverted Facts, at 9;

- whether the government used the specified treatment of goodwill as an inducement for Public and Homewood to merge, Def.'s Response to Pl.'s Statement of Genuine Issues and Proposed Findings of Uncontroverted Facts, at 19;

- whether any negotiations regarding the specified accounting treatment took place, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss and for Partial Summ. J., at 10; and

- whether Homewood's poor financial condition or other financial circumstances unrelated to governmental approval of plaintiff's treatment of goodwill motivated the acquisition of Public, Pl.'s Statement of Genuine Issues and Proposed Findings of Uncontroverted Facts, at 8.

### CONCLUSION

Believing, as we must, the non-movant's version of events, and drawing all inferences in its favor, there is sufficient evidence to preclude judgment in plaintiff's favor on the issue of liability. *See C. Sanchez and Son, Inc. v. United States,* 6 F.3d 1539 (Fed.Cir. 1993). Similarly, plaintiff's allegations are sufficient, if believed, to withstand the government's motion for summary judgment.

Therefore, the cross-motions for summary judgment both are denied and trial shall be conducted, as set out in the court's Order re: Mini–Trial of this date, on a date to be decided, in January 2002.